UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 2:24-cr-00068-LEW |
| | ) | |
| WILLIE BANKS, | ) | |
| | ) | |
| Defendant | ) | |

## ORDER ON DEFENDANT'S REQUEST FOR *FRANKS* HEARING

On March 13, 2024, Westbook Police executed a search warrant at 290 Cumberland Street, Apartment 1.  As a result of the search, Defendant Willie Banks was indicted on one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Before the Court is Mr. Banks's Motion to Suppress and for a Franks Hearing (ECF No. 21).  Chiefly, Mr. Banks argues that the affidavit in support of the search warrant contained material misrepresentations and omissions and, on that basis, he moves for an evidentiary hearing to examine the truthfulness of the affidavit.  *See Franks v. Delaware*, 438 U.S. 154, 156 (1978).  For the following reasons, Defendant's motion for a *Franks* hearing is denied. A ruling on the Motion to Suppress is reserved pending a suppression hearing.

# BACKGROUND[1]

On March 13, 2024, Westbrook Police responded to a report of gunfire at an apartment complex. While there, they spoke with Mr. Banks, who took them into the apartment where they met Mackenzie Ross and Melissa Staples. All three adults have a similar build. Mr. Banks was wearing a black shirt and dark, patched pants, Ms. Ross had on a light top and dark bottoms, and Ms. Staples had on a black hoodie and dark pants. Ms. Ross told the police that another woman, Nadira Thomas,[2] came into the apartment and threatened to kill her at gunpoint. Mr. Banks told the police officers that he had seen a woman fire a gun multiple times from the driveway.

A neighbor, who had a security camera outside his home, provided footage of the altercation to police at the scene. The video shows a person, presumably Ms. Thomas, walk over the driveway, up the stairs, and into the apartment. A few moments later, Thomas left the apartment and was followed by another person. The two seemingly talked for a short time. Thomas then walked down the stairs, and the other person returned to the apartment. As she walked down the driveway, Thomas pointed a gun in the air and fired it. Immediately after, a person from the apartment ran outside and fired six times at Thomas before returning inside. Following the gunfire, a person left the apartment and knocked on a neighbor's door. They were briefly joined by a second person from the apartment before

---

[1] The background statement is drawn from Defendant's Motion to Suppress (ECF No. 21) and the Government's Response (ECF No. 24).

[2] Occasionally referred to as Ms. Thompson in filings, I adopt the more frequently used Ms. Thomas.

both returned to the apartment.  When police arrived, Mr. Banks exited the apartment to signal to them.

Reviewing the footage, Special Agent Robinson stated he "immediately recognized" Mr. Banks as the person who exited the apartment firing a gun.  Special Agent Robinson knew Mr. Banks from previous police work.  Detective Jeffrey Stackpole then detained Mr. Banks and gave him his *Miranda* rights before questioning him again about the shootings.  Mr. Banks told the police that two women had come to the apartment and were involved in the shooting and that there were no firearms in the apartment.  Around the same time, Special Agent Robinson interviewed Ms. Ross, who stated Ms. Thomas held her at gunpoint before Mr. Banks and Ms. Staples asked Ms. Thomas to leave.  Ms. Ross stated that she, Ms. Staples, and Mr. Banks were all in the kitchen when the shooting started outside the apartment.  When Special Agent Robinson told Ms. Ross he knew it was Mr. Banks who had fired at Ms. Thomas, she stated she did not know anything about that.

The police officers allowed Ms. Staples to leave after they confirmed she did not have a gun on her.  Detective Stackpole left to request a search warrant for the apartment.  In Stackpole's affidavit in support of the search warrant he describes the video footage provided by the neighbor.  It is this description in the affidavit that forms the basis of Defendant's arguments.

## DISCUSSION

Affidavits in support of search warrants are presumptively valid.  *Franks v. Delaware*, 438 U.S. 154, 171 (1978).  However, a defendant may seek a *Franks* hearing to

attack the veracity of a supporting affidavit. *Id.* at 156. The bar to mandating a *Franks* hearing is intentionally high. A defendant is only entitled to a *Franks* hearing "if he can make a substantial showing that (1) the affiant intentionally or with reckless disregard for the truth included a false statement in the affidavit, or omitted information from the affidavit; and (2) such false statement or omitted information was material to the probable cause inquiry." *United States v. Austin*, 991 F.3d 51, 57 (1st Cir. 2021). Reckless disregard for the truth entails a showing that the affiant "'entertained serious doubts as to the truth' of the allegations." *United States v. Ranney*, 298 F.3d 74, 78 (1st Cir. 2002) (quoting *United States v. Williams*, 737 F.2d 594, 602 (7th Cir. 1984)). "Recklessness may be inferred 'from circumstances evincing obvious reasons to doubt the veracity of the allegations.'" *Id.* (quoting *Williams*, 737 F.2d at 602)).

Defendant alleges ten deficiencies in Detective Stackpole's affidavit.[3] In short, Defendant argues that Detective Stackpole's affidavit contained several misrepresentations and omissions, most of which revolve around the identification of Mr. Banks as the person

---

[3] Defendant's Motion to Suppress states that Detective Stackpole's affidavit: (1) "omitted any physical description of Ms. Ross, Mr. Banks and Ms. Staples" and "omitted that Ms. Staples was not a prohibited possessor," Def.'s Mot. at 2; (2) "made no mention of the circumstances that led up to the discharge of the firearms [and] did not include any mention of Ms. Thompson's documented threats to kill Ms. Ross nor of Ms. Thompson holding Ms. Ross at gunpoint," *id.*; (3) stated Detective Stackpole "viewed the video and concluded [it depicted] an argument between Ms. Thomas" and the Defendant, *id.* at 3; (4) "omitted that the person who interacted with Ms. Thomas outside returned inside," *id.*; (5) misrepresented that the exchange of gunfire seen on the video was between the Defendant and Thomas, *id.* at 4; (6) misrepresented that the "video clearly shows a male exit apartment 1 and fire six rounds" and improperly relies on Robinson's statement that he "immediately recognized the male in the video" as the Defendant, *id.*; (7) misrepresented that the Defendant ran back into the apartment following the gunfire to call 911, *id.* at 5; (8) misrepresents that the Defendant was seen on the video exiting the apartment to knock on a neighbor's door following the gunfire, *id.*; (9) omitted that a second person exited the apartment and misrepresented that "no one else exits or enters the apartment after the shooting," *id.*; and (10) omitted Ms. Ross's exculpatory statement that the Defendant was in the kitchen when the shots were fired, *id.* at 6.

who fired upon Ms. Thomas. Defendant argues that the poor quality of the video undermines the ability to identify who the figure is and that Detective Stackpole's repeated identifications of Mr. Banks as the figure was an assertion made with reckless disregard for the truth. Defendant contends that were the affidavit to identify instead only a "person in dark clothing" probable cause to search the apartment would not have existed. Def.'s Mot. at 10. The Government counters that the Defendant was identifiable on the video because he had short hair compared to Ms. Ross and Ms. Staples. Further, the Government notes Mr. Banks told them he knocked on his neighbor's door following the shooting, so police could reference him as the figure in the video.

## A.  RECKLESS DISREGARD FOR THE TRUTH

Regarding the first prong of *Franks*, the inquiry is whether the circumstances give "obvious reasons" to doubt that the figure in the video was Mr. Banks. *Ranney*, 298 F.3d at 78. The video quality is of sufficiently low resolution for me to conclude that the Government's argument that Mr. Banks was identifiable by his comparatively short hair, lacks luster. As the Defendant points out, Ms. Staples' dark hair and hoodie make it plausible she could have been the individual who exited the apartment to fire the gun. On the other hand, Robinson had the benefit of both past familiarity with Banks and his observation of the occupants of the apartment in person before seeing the video, circumstances that may have informed his conclusion. In any case, given the paucity of helpful pixels, I decline to deconstruct the video frame by Zapruder frame, most notably because Defendant's motion so readily fails on the question of probable cause.

B.    **PROBABLE CAUSE**

In analyzing a request for a *Franks* hearing in which the Defendant alleges the search warrant affidavit omitted material facts, the inquiry is whether the inclusion of the omitted information would have led to a magistrate judge finding that the search warrant application was not supported by probable cause. *United States v. Rigaud*, 684 F.3d 169, 173 n.5 (1st Cir. 2012). Where the defendant instead alleges that the affidavit contained material misrepresentations, the inquiry is whether inclusion of one or more misrepresentations was necessary for probable cause to exist. *Id.* Here, Defendant alleges both misrepresentations and omissions, but all his contentions center around Detective Stackpole's identification of Mr. Banks as the individual who shot at Ms. Thomas. The question is then whether a "reformed" affidavit that includes alleged omissions and excludes alleged falsities would still support a finding of probable cause.

Search warrants are governed by the Fourth Amendment, which provides that "no Warrants shall issue, but upon probable cause supported by Oath or affirmation." U.S. Const. amend. IV. For search warrants, the probable cause requirement is twofold: there must be probable cause to believe a crime has been committed (the "commission element") and that enumerated evidence of the crime will be found at the place searched (the "nexus element"). *United States v. Dixon*, 787 F.3d 55, 59 (1st Cir. 2015) (internal quotations omitted). Probable cause exists where "given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). The fair probability standard "is less than a more-likely-than not standard." *United States v. Gonzales*, 113 F.4th 140,

148 (1st Cir. 2024) (citing *United States v. Feliz*, 182 F.3d 82, 88 (1st Cir. 1999)).  In short, the probable cause standard is not a difficult one, it "demands only the kind of fair probability on which reasonable and prudent people, not legal technicians, act." *United States v. Adams*, 971 F.3d 22, 32 (1st Cir. 2020) (quoting *Florida v. Harris*, 568 U.S. 237, 244 (2013)) (cleaned up).

An affidavit revised to correct Defendant's alleged misrepresentations and omissions would, rather than identify Mr. Banks as one of the individuals depicted in the video, instead simply include a more benign description of an "individual in dark clothing" firing a gun at Ms. Thomas.  Additionally, it would include Ms. Thomas's actions prior to the shooting, the fact that Ms. Staples was not prohibited from possessing firearms, the events leading to the gunfire, and Ms. Ross's exculpatory statements.  This revised affidavit might reduce below the level of metaphysical certainty that Mr. Banks is culpable for a crime, but it does not reduce below the probable cause threshold the inference that a crime occurred or that evidence of the crime would be found in the apartment in question to support the warrant.

The revised affidavit would provide that someone left the apartment with a gun and fired it six times before returning to the same apartment.  Ms. Ross's exculpatory statements, if included, would place both Mr. Banks and Ms. Staples inside during the shooting.[4]  The revised affidavit thus gives equal odds that Mr. Banks or Ms. Staples, a

---

[4] The Government's Opposition to Defendant's Motion to Suppress (ECF No. 24) states there was also a "young juvenile male" inside the apartment.  ECF No. 24 at 2.  Neither party discusses his involvement in the altercation.  Presumably, he is also not the figure wielding a firearm on the video as he would not have a similar build to the three adults.

potentially lawful possessor, was the individual who fired the gun.  In either instance the affidavit likely allows a reasonable inference of a fair probability that a crime occurred, be it that Mr. Banks unlawfully possessed a firearm or that some person committed an assault, and that the gun, last seen in possession of a person entering the apartment, would be found there.  Statements about the altercation prior to the shooting, as is true of the other as yet undeveloped plot twists, may provide grist for the trial mill and allow Defendant to thwart the Government's attempt to prove him guilty beyond a reasonable doubt of the crime charged.  However, they neither eliminate nor reduce the "fair probability" of either the commission or the nexus element of the probable cause inquiry.  Thus, Defendant has failed to make out a substantial showing that the alleged deficiencies in Detective Stackpole's affidavit were material to a finding of probable cause.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Suppress and for a Franks Hearing is RESERVED IN PART and DENIED IN PART.  The Motion to Suppress is RESERVED pending a hearing.  The request for a *Franks* hearing is DENIED.

SO ORDERED.

Dated this fourth day of December, 2024.

/s/ Lance E. Walker
Chief U.S. District Judge