UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) |
| WILLIE BANKS, | )   2:24-CR-00068-LEW |
| | ) |
| Defendant | ) |

# ORDER ON DEFENDANT'S MOTION TO SUPPRESS

Defendant Willie Banks is facing a one-count indictment charging him with being a felon in possession of a firearm. Before the Court is Defendant's Motion to Suppress (ECF No. 21). In his motion, Defendant requested a *Franks* hearing which I denied while preserving his suppression motion. *See* Order on Def.'s Request for *Franks* Hearing (ECF No. 28). Following a suppression hearing and for the following reasons, Defendant's Motion to Suppress is DENIED.

## BACKGROUND[1]

Last year, there was a shootout outside Defendant's apartment. Luckily enough, a neighbor's security camera recorded the firefight, albeit in low resolution quality. Nadira Thomas,[2] is shown on video entering and then leaving the apartment. A second figure exits

---

[1] This background is drawn from Mr. Banks's Motion (ECF No. 21), the Government's Response in Opposition (ECF No. 24), Mr. Banks's Reply (ECF No. 27), and the hearing on Mr. Banks's Motion held on January 16, 2025 (Hearing Tr. ECF no. 35).

[2] The parties dispute the identity of most persons depicted in the grainy video, but agree Ms. Thomas is not one of them.

the apartment following her, and talks with her before returning inside. As she leaves the apartment's driveway, Thomas fires a gun into the air. Someone rushes out of the apartment and shoots and misses Thomas six times. The gunslinger returns to the apartment. A little later, two people exit. One knocks on a neighbor's door before both return inside. As police arrive, Mr. Banks exits the apartment to signal to them.

Inside the apartment were Banks, Mackenzie Ross, and Melissa Staples. All are adults. All were similarly dressed in black save Ross's white top. Despite the occupants' similar attire, Special Agent Phil Robinson identified the apartment shooter from the video as Banks because Agent Robinson knew him from previous policework. Police detained Banks. Agent Robinson went on to interview Ross, who recounted that Thomas had barged into the apartment to threaten her at gunpoint. Eventually, Banks and Staples conducted Thomas out of the apartment. Ross's version of events places herself, Banks, and Staples in the apartment kitchen at the time of the shootings. Staples refused to say more than that she had heard shots outside and called 911. She left the scene after police confirmed she was not armed.

Enter Detective Jeffrey Stackpole, the on-call detective that night. Detective Stackpole arrived after Banks had been detained. Before reviewing the video, Detective Stackpole Mirandized and interviewed Banks. Banks attributed the shootings to two women and not himself. He stated that one woman remained outside while Thomas threatened Ross. When the two women left, Banks said he saw gunshots in the driveway while he was in the kitchen. Banks also denied that there were any guns in the apartment.

Detective Stackpole then watched the video two or three times. He believed the person who spoke with and later shot at Thomas was Banks for a couple reasons. Banks was the only person in the apartment with short hair and the second shooter on video did not appear to have long hair. Banks "put himself in the video" by stating he was the one who had knocked on a neighbor's door and Detective Stackpole believed the knocker and the shooter to be the same person. Hearing Tr. (ECF No. 35) at 12.

Detective Stackpole left to request a search warrant for the apartment. The warrant was granted, and police searched the apartment and found one Glock, Model 33 .357 caliber pistol. Mr. Banks was subsequently arrested and later indicted under 18 U.S.C. §§ 922(g)(1), 924(a)(8).

## DISCUSSION

In his motion, Banks's arguments were mostly centered on alleged false statements and material omissions in Detective Stackpole's affidavit. These arguments were rejected in my order denying Mr. Banks's request for a *Franks* hearing. *See generally* Order on Def.'s Request for a *Franks* Hearing (ECF No. 28). In my Order, I found that the search warrant at issue supported probable cause independent of any alleged misrepresentations or omissions in its supporting affidavit. *Id.* at 6-8. Absent any disputes beyond the four corners of the affidavit, that determination can result in a denial of Defendant's Motion to Suppress without hearing. *See United States v. Gordon*, 871 F.3d 35, 50 (1st Cir. 2017) ("[A] general evidentiary hearing is only warranted if the party seeking suppression 'makes a sufficient threshold showing that material facts are in doubt or dispute, and that such facts cannot reliably be resolved on a paper record.'" (quoting *United States v. D'Andrea*, 648

F.3d 1, 5 (1st Cir. 2011))). Nonetheless, I granted an evidentiary hearing to hear any remaining "attacks that were collateral to the affidavit." Hearing Tr. at 3.

At the hearing, Defense Counsel raised several factual disputes, all immaterial to the issue of probable cause: how many entrances and exits the apartment has, Banks's alibi, and the graininess of security footage. These disputes are more appropriately grist for the trial mill to forestall efforts by the Government to meet its burden of proof. These arguments do not change the fact that the security video shows someone firing a gun six times and running into Banks's apartment afterwards.

The Search Warrant (ECF No. 21-3) sought "firearms and ammunition all of which are contraband and evidence of the offenses of Possession of a Firearm by a Prohibited Person (15 M.R.S.A. §§ 393.1.A-1.1) and Aggravated Reckless Conduct with a Dangerous Weapon (17-A M.R.S.A. §§ 213.1)." Search Warrant at 1. Aggravated reckless conduct occurs if a "person with terroristic intent engages in conduct that in fact creates a substantial risk of serious bodily injury to another person." 17 M.R.S.A. § 213. Terroristic intent is intent to "cause serious bodily injury or death to multiple persons" with the "purpose of intimidating or coercing a civilian population or to affect the conduct of the government." *Id.* § 2(25)(A).

The Fourth Amendment provides "no Warrants shall issue, but upon probable cause supported by Oath or Affirmation. U.S. CONST. amend. IV. Probable cause has two elements: there must be probable cause to believe a crime has been committed (the "commission element") and that enumerated evidence of the crime will be found at the place searched (the "nexus element"). *United States v. Dixon*, 787 F.3d 55, 59 (1st Cir.

2015).  Probable cause exists where "given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).  The fair probability standard "is less than a more-likely-than not standard."  *United States v. Gonzales*, 113 F.4th 140, 148 (1st Cir. 2024) (citing *United States v. Feliz*, 182 F.3d 82, 88 (1st Cir. 1999)).  Probable cause "demands only the kind of fair probability on which reasonable and prudent people, not legal technicians, act."  *United States v. Adams*, 971 F.3d 22, 32 (1st Cir. 2020) (quoting *Florida v. Harris*, 568 U.S. 237, 244 (2013)) (cleaned up).

  Probable cause to support the warrant was well met.  Discrepancies of minutiae for purposes of a motion to suppress do nothing to undermine the probability that a crime occurred, which in this case is several zip codes north of a "fair probability."  *See United States v. Miller*, 589 F.2d 1117, 1128 (1st Cir. 1978) ("[Probable cause]" does not require the quantum of proof necessary to convict.").  A reasonably prudent person could conclude, almost certainly must conclude to a metaphysical certainty, that there was a fair probability someone who fired six rounds in a residential neighborhood committed aggravated reckless conduct as defined by Maine law.

  Similarly, probable cause existed to support the suspected crime of Possession of a Firearm by a Prohibited Person.  Detective Stackpole's affidavit, at a minimum, details that someone fired a weapon and then entered Mr. Banks's apartment without disposing of the gun.  It also details that Mr. Banks is prohibited from possessing a firearm and attaches his criminal record.  Along with the other information gathered regarding Mr. Banks's

presence in and around the apartment at the time of the shootings, the affidavit supports a fair probability that Mr. Banks's violated 15 M.R.S.A. § 393(1)(A).

## CONCLUSION

For the foregoing reasons, Mr. Banks's Motion to Suppress is DENIED (ECF No. 21).

**SO ORDERED.**

Dated this 27th day of February, 2025.

/s/ Lance E. Walker
**LANCE E. WALKER**
**CHIEF US DISTRICT JUDGE**