UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 2:24-cr-00068-LEW |
| | ) | |
| WILLIE BANKS, | ) | |
| | ) | |
| Defendant | ) | |

### ORDER ON DEFENDANT'S MOTION FOR SANCTIONS

At the hearing on Defendant's Motion to Suppress, defense counsel introduced into evidence certain documents intended to impeach government witness Jeffrey Stackpole, a police detective. Defense counsel obtained the documents from a colleague and a Maine Freedom of Access Act request, and not from the Government, despite the Government's "affirmative duty to disclose evidence favorable to a defendant." *Kyles v. Whitley*, 514 U.S. 419, 432 (1995) (citing *Brady v. Maryland*, 373 U.S. 83, 86 (1963)).

In a companion order, I have denied Defendant's Motion to Suppress. In this order I separately address Defendant's Motion for Sanctions (ECF No. 40). The Motion is based on an alleged *Brady*/*Giglio*/Rule 16 violation and requests that I "prohibit[] the use at trial of any evidence obtained pursuant to [the] search warrant" executed at Defendant's residence. Mot. at 1. Because I find Defendant was not prejudiced by the Government's nondisclosure, Defendant's Motion is DENIED.

## BACKGROUND

Last year, a shooting occurred outside the Defendant's apartment. A neighbor's security camera recorded the event. Westbrook Police Detective Jeffrey Stackpole identified Defendant as one of the shooters that appeared on the video. Detective Stackpole obtained a search warrant for Defendant's apartment, where police recovered a gun, and Defendant now faces a one-count indictment of being a felon in possession of a firearm.

As required by the Due Process Protections Act, which amended Rule 5 of the Federal Rules of Criminal Procedure, *see* Pub. L. No. 116-182, 134 Stat. 894 (Oct. 21, 2020), the Court issued a discovery order (ECF No. 10) reminding the Government of its disclosure obligations. Defendant also reminded the Government of its obligations by sending the prosecutor a formal discovery request and, upon learning that the officers investigating Mr. Banks may have disciplinary history, submitted a supplemental request for discovery, stating:

> It is my understanding that [Another Officer] was suspended in 2014. I am unaware of the circumstances surrounding his suspension. I similarly believe that Jeffrey Stackpole has been disciplined (or reprimanded). To the extent that their personnel files contain Brady and/or Giglio material please produce such evidence.

Defense counsel followed up a third time and, hearing nothing from the Government, sent a Maine Freedom of Access Act request to the Westbrook Police Department.

From the FOAA request, defense counsel received records of a reprimand and a counseling statement for Detective Stackpole. From a colleague, defense counsel received a separate reprimand. From the Government, defense counsel received a letter stating it had "not located any material that would fall within the purview of Brady or Giglio."

The three items uncovered by Defendant are a reprimand for use of inappropriate language, another for speeding in violation of law, policy, and a supervisor's order, and a counseling statement concerning harassment of another officer.

The Government states that it:

> followed its longstanding practices and procedures in requesting potential Giglio material from the Westbrook Police Department. The Government also conducted an oral interview of Detective Stackpole, requested any potential Giglio information about him from the Westbrook Police Department, made any necessary follow-up inquiries, and analyzed whether any of the information that it learned constituted exculpatory or impeachment information about him for which disclosure was warranted under Brady, Giglio, their progeny, or the pertinent U.S. Department of Justice policy provisions . . . .

Gov't's Brief (ECF No. 41) at 2.  The Government "further inquired" with Detective Stackpole when Defendant followed up on his *Giglio* request.  *Id.* at 3.  During cross-examination, Detective Stackpole testified that he reviewed his personnel file with his police chief and disclosed only one of the items to the Government—the speeding violation.  Hearing Tr. at 24, 30.  Although provided to it, the Government did not pass this reprimand along to Defendant.

At the hearing, I admitted the reprimands over the Government's objections after defense counsel proffered that the disciplinary evidence impeached Detective Stackpole by establishing a pattern of him disregarding law and policy if he felt he was in the right. Defense counsel also questioned Detective Stackpole about a 2014 lawsuit against Westbrook that named him as a defendant and related in part to his work performance and adherence to policy.  Detective Stackpole testified that he did not inform the Government

3

of this suit, either.  Defense counsel then moved for sanctions, requesting the suppression of the recovered firearm and all related evidence.

## DISCUSSION

Banks seeks sanctions for the Government's alleged failure to produce impeaching *Giglio* material.  Banks argues the Government shirked its disclosure obligations both by failing to surrender the *Giglio* material it had and by failing to find *Giglio* information after it was specifically requested.  The Government responds that the information it had did not warrant disclosure and, in any event, did not prejudice Banks.

"The district court has broad discretion to redress discovery violations in light of their seriousness and any prejudice occasioned the defendant."  *United States v. Joselyn*, 99 F.3d 1182, 1196 (1st Cir. 1996); *see also* Fed. R. Crim. P. 16(d)(2) (authorizing district court to, among other things, "enter any . . . order that is just under the circumstances").  This authority allows outright dismissal of the indictment in extreme cases.  *See United States v. Urciuoli*, 470 F. Supp. 2d 109, 113-14 (D. R.I. 2007) (collecting authority).  As there is a standing court order to disclose *Giglio* material (ECF No. 10), I could even hold the individual Assistant United States Attorney in contempt under 18 U.S.C. § 401.  But the appropriate remedy depends on whether a violation occurred and, if so, how the proceeding can be made fair to the defendant.

A prosecutor's duty to disclose certain evidence is a rule rooted in fairness.  For a fair adversarial system, defense attorneys need some tool to access evidence adverse to the prosecution—especially when that evidence may only exist in the prosecution's file.  The Supreme Court has mandated that "the suppression by the prosecution of evidence

4

favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963).

In subsequent cases, the Court clarified that disclosure obligations include material capable of impeaching government witnesses—so called *Giglio* material. *Giglio v. United States*, 405 U.S. 150, 153-54 (1972); *see also United States v. Bagley*, 473 U.S. 667, 676 (1985). Constitutional error can result when the Government fails to disclose material, favorable evidence, whether impeaching or exculpatory. *Bagley*, 473 U.S. at 677-78. Evidence is "material" if there is a reasonable probability that its disclosure would result in the proceeding having a different outcome. *Strickler v. Greene*, 527 U.S. 263, 280 (1999).

Although *Brady* creates "no general constitutional right to discovery," *Weatherford v. Bursey*, 429 U.S. 545 (1977), "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case," *Kyles v. Whitley*, 514 U.S. 429, 438 (1995). This includes finding information known to law enforcement officers but not the prosecutor. *Id.* If the materiality of evidence is ambiguous, prosecutors should err toward disclosure. *Id.* at 439 ("[A] prosecutor anxious about tacking too close to the wind will disclose a favorable piece of evidence.").

Ultimately, although I am critical of the Government's performance of its *Giglio* disclosure obligations in this case, the Defendant discovered the materials at issue before the hearing on his Motion to Suppress and is in a solid position to receive a fair trial, just as he received a fair assessment of his Motion to Suppress. This militates against granting

5

the relief Defendant has requested, suppression of evidence gathered pursuant to a valid warrant supported by probable cause. As for a lesser sanction, none has been requested, so I limit it to the following critique and admonition.

The Government found, but did not produce, one item of potential impeachment evidence and failed to uncover two others that evidently were present in Detective Stackpole's personnel file. The Government's arguments focus on the materiality and favorableness of the evidence. This skips an important initial question, which is why some material in the Westbrook Police Department's possession was not accessed by the Assistant United States Attorney. *Brady* applies regardless of the prosecutor's knowledge and a well-ordered police department should take pains to ensure that the prosecutor is able to assess all potential *Brady* and *Giglio* materials in its possession. *See Kyles*, 514 U.S. at 438 (rejecting argument *Brady* does not cover "evidence known only to police investigators and not to the prosecutor"). The prosecutor's office, likewise, must take steps to ensure that all such materials are provided to it, even if it then determines that disclosure is unwarranted.[1]

Defense counsel requested *Brady*/*Giglio* materials from Detective Stackpole's personnel file as it pertained to disciplinary or reprimanding actions. Nothing in the Government's briefing suggests the Assistant United States Attorney reviewed Detective Stackpole's personnel file. The principles laid out in *Kyles* make clear that a prosecutor is obliged to find and disclose *Brady* material known to police. *Id*. at 437-438. When a

---

[1] A prosecutor should not be deprived of evidence that is responsive to a freedom of access or freedom of information request. Nor should a Defendant need to resort to such a request to obtain discovery in a criminal case.

prosecutor opts not to review a personnel file after defense counsel request specific *Brady* material within it, he or she does it at the risk of causing a constitutional violation.

As for the one piece of potential *Giglio* material known to the prosecutor, which also went undisclosed, it must be observed that materiality may be established based on the cumulative effect of *Giglio* material. Defense counsel, in fact, sought to use cumulative evidence of misconduct to establish a pattern of behavior for the purposes of impeachment. Although *Brady* does not impose an obligation on the prosecution to divine a defendant's intended strategy, the prosecution must still look at all potential evidence and not consider an item's materiality in isolation. When cumulative evidence is disintegrated in such a way as to tilt the scales away from a disclosure obligation, there is a dangerous possibility a *Brady* violation will occur. *See Kyles*, 514 U.S. at 437 ("[T]he prosecution, which alone can know what is undisclosed, must be assigned the consequent responsibility to gauge the likely net effect of all such evidence and make disclosure when the point of 'reasonable probability' is reached.").

The Government, now aware of all of the evidence, argues the reprimands are not covered by *Brady* or *Giglio* because they are neither favorable nor material to the Defendant. The Government's favorability fuss falls flat considering its obvious, if not overwhelming, impeachment value. Evidence of a police officer's policy violations may call into question the veracity of his testimony, and repeated violations even more so.

On materiality, the Government is quick to point out the policies violated here—harassment, speeding, and inappropriate language—are unlikely to bear on credibility. The strongest impeachment evidence is the one piece of evidence the Government had and did

7

not disclose: Detective Stackpole's written reprimand for speeding. Detective Stackpole received this reprimand not merely for exceeding the speed limit, but for disregarding an order from a superior officer. By selectively turning over this reprimand to the prosecution, the Westbrook Police Department effectively acknowledges, minimally, its favorability. Nonetheless, the materiality inquiry requires that the evidence be strong enough to generate a reasonable probability of a different outcome during criminal proceedings. *Strickler v. Greene*, 527 U.S. at 280.

In the final analysis, I decline to make a finding in this case as to the materiality of the combined evidence withheld by the Government. I do so because Defendant obtained all of the evidence at issue in time for it to be considered at the suppression hearing and at trial and has not therefore been prejudiced. Traditionally, alleged *Brady* violations are assessed retroactively because they arise post-trial and on appeal. Here, the evidence was available pre-suppression hearing and is available pretrial, so even assuming the combined evidence's materiality, no constitutional injury has or will result. I therefore conclude with advice expressed elsewhere to the effect that justice is better served by erring on the side of caution and avoiding presumptuous attitudes about what judges and juries might consider material to the credibility of a witness. *See*, *e.g.*, *United States v. Agurs*, 427 U.S. 97, 108 (1976) ("[T]here is a significant practical difference between the pretrial decision of the prosecutor and the post-trial decision of the judge."); *United States v. Baugh*, 596 F. Supp. 3d 239, 244 (D. Mass 2022) ("A trial prosecutor's speculative prediction about the likely materiality of favorable evidence . . . should not limit the disclosure of such evidence, because it is just too difficult to analyze before trial whether particular evidence ultimately

8

will prove to be 'material' after trial." (quoting *States v. Olsen*, 704 F.3d 1172, 1183 (9th Cir. 2013)).

Nonetheless, the Government should not feel vindicated by the fortuity of a no-harm-no-foul ruling. I remain concerned with the Government's approach to its *Brady* and *Giglio* obligations in this case, which may fall just short of slipshod but which can comfortably be described as blasé. I hasten to acknowledge the obvious; to wit, that the discovery burdens laid at the feet of prosecutors are substantial and often complex. That reality may bear on the proportionality of sanctions in cases of inadvertent disclosure violations, although it should not act as a sentimental surrogate for the earnest discharge of the duty in the first instance, which buttresses the most fundamental constitutional right of the defendant – to receive a fair trial. The Government's fortune in this narrow circumstance is ironically tethered to the resourcefulness of defense counsel in obtaining the information through alternative means. The Government makes a category error if it concludes this will always be so. *See State of Maine v. Reed-Hansen*, 207 A.3d 191, 193 (Me. 2019) (affirming suppression of state's evidence based on state's failure to comply with its discovery obligation, despite suppression "effectively end[ing] the prosecution").

## CONCLUSION

Defendant's Motion for Sanctions is DENIED (ECF No. 40).

**SO ORDERED.**

Dated this 27th day of February 2025.

/s/ Lance E. Walker
Chief U.S. District Judge